**W. L. COURSEY, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. CA 3-1862-C.**

United States District Court
N. D. Texas,
Dallas Division.

June 23, 1969.

Will Gray, Houston, Tex., for petitioner.

Crawford C. Martin, Atty. Gen., of Texas, Austin, Tex., by Howard M. Fender, Asst. Atty. Gen., for respondent.

OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Petitioner herein W. L. Coursey, after having exhausted his state remedies, has filed his application for writ of habeas corpus in this court. He raises the following issues: (1) whether Petitioner's written confession was inadmissible and obtained in violation of the holding in Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964),[1] and (2) whether Petitioner was denied due process of law and equal protection of the law under the Fourteenth Amendment to the United States Constitution because his

---

1. W. L. Coursey was tried, convicted and sentenced on July 14, 1964, prior to the decision of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court-appointed attorney refused to appeal his conviction. He prays that the Court grant a writ holding his confession constitutionally invalid and remanding his case for a new trial or release from confinement, or in the alternative, that his case be granted an out-of-time appeal, or if no appeal is granted, Petitioner's release from illegal confinement. In that Issue (2) is dispositive of Petitioner's writ, this Court renders no opinion as to Issue (1).

■ Both sides have agreed to submit the case on the transcript made in the State District Court. This being the case, this Court is required, as urged by Respondent, to accept the fact findings made by the finder of fact, the State trial judge, at the time of the state habeas corpus hearing. Said findings can be discarded only if they are found to be clearly erroneous. Chaney v. City of Galveston, 368 F.2d 774, 776 (5th Cir. 1966). The trial judge stated them in his opinion denominated "Findings of Fact and Conclusions of Law". Only one finding relates to Issue (2) and it is:

> The court further finds according to the weight of credible evidence before it, that the defendant even though aware of his rights to appeal did not at any time ask his court-appointed counsel to appeal his conviction; further I certify as a trial district judge presiding at the trial of said cause in the District Court of Johnson County, Texas, that the defendant did not ask this Court assistance in the appeal of said cause.

The trial judge additionally stated:

> The Court finds that the defense attorney here, Gean Turner, was and is a very capable and competent attorney. There can be no question as to Mr. Turner's ability and qualifications as an able attorney to defend. He has defended many persons in the courts of this county. He enjoys an excellent reputation as a trial lawyer and has represented many defendants charged with criminal offenses. Mr. Turner

was licensed in 1932 and was district attorney in Johnson County for a period of twelve (12) years prior to the appointment in this case. The Court finds that Mr. Turner had ample time to prepare for the trial of said cause having known the background of the defendant and of the case. The Court finds that W. L. Coursey had competent and efficient representation. Had the defendant advised the Court of his intentions to appeal the Court would have taken the necessary steps in guaranteeing the defendant his constitutional right to an appeal.

These statements, however, are conclusive in nature and lend little insight into the actual situation required to resolve Petitioner's complaint.

The State habeas corpus record reflects Petitioner's testimony and that of his criminal trial attorney, Mr. Gean Turner, that Mr. Turner had been appointed on the day of his criminal trial and had interviewed petitioner for approximately 20 minutes in advance thereof. The trial lasted less than one day. The State Habeas Corpus trial record also shows that immediately following Petitioner's criminal trial his attorney, Mr. Turner, and the trial judge, at different times, discouraged Petitioner from taking an appeal. Petitioner's testimony in this regard was:

> Q All right. Now, listen to my question and answer this question, would you: Did you discuss appealing the case with Mr. Turner?
>
> A Yes, sir. When the jury said that the sentence carried a mandatory life sentence, I said, 'Mr. Turner, we're going to appeal this, ain't we?' He said, 'Why, no.' He said, 'I ain't got nothing to appeal it on, W. L.' He said, 'I can't appeal it.' I said, 'Well, I know my people can get you up some money or something, now. We've got to make some kind of a deal,' you know. He said, 'I just don't see nothing right now to appeal it on.' And,—
>
> Q Where did this discussion take place?

A In here, right here in this courtroom.

Q All right. So, he told you then that he wouldn't appeal it?

A Yes, sir.

Q Did you ask the judge anything about appealing the case?

A Yes, sir. When we got over here, I said, 'Judge, all of y'all,—The attorneys, they was all up there—I said, 'I'd like to appeal it,' you know. And, Judge Jackson said he didn't see where it was anything to have any grounds to appeal it on. He said he thought the trial went according to the Court's rules and everything. However, he said I have 10 days to come back up here and accept the sentence.

Q And, what did you do about the 10 days? Did you go waive those 10 days and go ahead and accept sentence?

A Yes, sir; I did.

Q Why did you do that if you wanted to appeal the case?

A When I got out here, we started to leave and—

Q Who is 'we'?

A Me and the deputies, policemen and all, we started out. And, my mother and them was out there sitting out in the audience. And, we got out there and they told me, said, 'It's best,' you know, 'for you to go ahead on down there' because I was sort of in a little solitary over there at the jail. They said, 'There ain't no use in you staying here. We ain't got no money or nothing right now. We can't help you.' And, I said, 'Well, I'll tell you what I'll do:' Being as I wasn't going to get no help no how, I said, 'If you will take me on down there tonight instead of holding me over there in that little old cell, I'll go on up and get my sentence and go ahead,' you know. So, Mr. Kind said, 'Yeah, well yeah, come on. Let's go back up here.' So, we went back up there and I got the sentence.

Q Then, you came back into the courtroom before the judge and—

A Yes, sir. We come back.

Q —and waived the 10 days and accepted the sentence?

A Yes, sir. Waived the 10 days and accepted the sentence.

Q And, that was for the reason you've just told us?

A Yes.

Q Any other reasons why you went ahead and accepted sentence?

A No, sir. I just didn't want to be over there in that jail over there.

MR. GRAY: All right. Pass the witness.

Mr. Turner's testimony as to his recollection or lack of it was:

Q All right, sir. Now, as I understand your testimony, your recollection is not too good on whether or not he, W. L. Coursey, asked you to appeal the case or not. Is that right?

A I don't believe W. L. ever asked me to appeal the case.

Q You don't have any recollection of that?

A I could be wrong but I don't have any recollection of his having ever asked me to appeal it.

Q You're not saying that that couldn't happen or didn't happen?

A No, I'm not saying it absolutely didn't happen.

Q You just don't have any recollection of it?

A I don't believe it happened because I think I would have remembered it.

Q Let me show you, Mr. Turner, page 9 of the statement of facts which has been introduced in this proceeding as the Applicant's Exhibit Number 4. This is the testimony of Officer Carroll. (Reading) 'Would you tell the

jury, please, substantially what the warning was?' Answer: 'Well, he was warned that the statement could be used against him, or for him. It was the preliminary warning we give on all statements.' Do you recall that?

A No, I don't recall it myself.

Q You do know, of course, that under the Texas Case Law that's absolute reversible error on appeal?

A Yes. If they make a statement believing it can be used for them, I think that would be error.

MR. GRAY: Yes, sir. We pass the witness.

In sum, this testimony indicates that the discouragement in conjunction with Coursey's personal desire to leave the county jail caused Petitioner to accept sentence the day of the trial and thereby waived his right of appeal.

■■ If Petitioner had waived his appeal simply to get out of the county jail where he was and would have been duly held, he would have no case. Here, however, an important facet of his decision to waive appeal resulted from reliance on the like opinions of his attorney and the trial judge. This is not to say that an attorney may never advise his client that an appeal would be futile, but that some time for reflection on the record is indicated before final determination of the question is made. Such an on-the-spot determination substantially reduces the effectiveness of counsel at a stage when a Defendant has a constitutional right to adequate counsel. This Court, therefore, finds that Petitioner Coursey is entitled to an out-of-time appeal. Petitioner shall have thirty (30) days from the date of this Opinion to perfect such an appeal and the State thirty (30) days from Petitioner's such filing to grant the appeal. Should Petitioner not perfect his appeal he will be considered to have waived his right of appeal. Should the State not grant the appeal within the prescribed period, Petitioner is ordered released pursuant to the writ of habeas corpus herein granted.