STATE OF HAWAII, Plaintiff-Appellee, *v.* ROCKY RONALD CARABALLO, also known as Rocky Ronald Caravalho, Ronald Valentine Caravalho, Carlos R. Caraballo, Defendant-Appellant, and DANIEL WAYNE FIGUEROA and VALENTINO BUCHAN, Defendants

NO. 6583

JULY 15, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ., RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE LUM, ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendant-appellant Rocky Ronald Caraballo was convicted of first degree robbery and rape following a two-day jury trial and was sentenced to a twenty-year prison term. We affirm.

Defendant raises two main issues on appeal involving alleged violations of his constitutional rights during the trial. Before proceeding to the merits of his claims, however, this court must address the basis for its jurisdiction over the case. Tracing the unusual sequence of events leads to our finding that we have jurisdiction to hear defendant's appeal.

I.

Defendant was found guilty of rape and robbery charges by jury verdicts rendered May 31, 1974. At sentencing on July 19, 1974, defendant's court-appointed attorney who represented him during the trial entered an oral notice of appeal. However, as a result of a conversation between defendant and his attorney shortly after sentencing, defendant decided to withdraw his appeal. Consequently, a written Withdrawal of Notice of Appeal was filed on July 25, 1974. Defendant's court-appointed counsel believed and so advised defendant that time he spent incarcerated pending his appeal would be "dead time" and would not be applied to his minimum sentence. Furthermore, he advised defendant that this time could be even longer than the minimum sentence set by the parole board. However, on August 8, 1974 while talking to another court-appointed attorney, defendant learned that this original advice was erroneous[1] and thereafter filed a "Notice

---

[1] Defendant's first counsel told him that his minimum sentence would not be set until he was transferred to Oahu Prison and that this would not happen until his appeal was resolved. However, HRS § 706-669(1) in effect at the time specifically provided:

(1) When a person has been sentenced to an indeterminate or an extended term of imprisonment, the Hawaii paroling authority shall, as soon as practicable but no later than six months after commitment to the custody of the director of the

of Appeal'' and ''Motion for Leave to Appeal In Forma Pauperis'' on December ‵30, 1974. This motion was continued pending this court's determination of its jurisdiction over the motion. The state responded by filing a motion to dismiss the appeal on grounds that the ten-day period for filing a notice of appeal had long since run. We granted the motion in an order filed February 10, 1975.[2]

Defendant's next step was to file a petition for writ of habeas corpus in federal district court. On May 12, 1977, the United States District Court for the District of Hawaii issued an order granting defendant's petition.[3]

Defendant filed a notice of appeal in this court on May 20, 1977. On March 10, 1978 an order granting the ''Motion for Leave to Appeal In Forma Pauperis'' was filed by the First Circuit Court. At hearings on the appeal, defense counsel addressed the jurisdictional issue and both defendant and the state have subsequently filed supplemental briefs on the question.

---

department of social services and housing hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.

*See* ABA Standards Relating to Sentencing Alternatives and Procedures § 3.6. *See also* Annot., 90 A.L.R.3d 408 (1979); Annot., 77 A.L.R.3d 182 (1977); Annot., 35 A.L.R.2d 1283 (1954).

[2] The order read:

IT IS HEREBY ORDERED that the appeal herein be and the same is dismissed. IT IS FURTHER ORDERED that the case be remanded to the Circuit Court of the First Circuit for execution of sentence.

[3] Whether this action was the proper procedure for defendant to pursue at this time is questionable but need not be discussed here. *See* HRS § 602-4, Hawaii Supreme Court Rule 10. *See also* Kimball v. Sadaoka, 56 Haw. 675, 548 P.2d 268 (1976). Judge Samuel P. King's order allowed defendant to file an ex parte motion for issuance of the writ unless defendant's appeal was granted. The United States Circuit Court of Appeals for the Ninth Circuit affirmed the District Court's order in a memorandum opinion filed February 17, 1978.

Hawaii Rule of Criminal Procedure 37(c) reads:[4]

(c) Time for Taking Appeal. An appeal by a defendant may be taken within 10 days after entry of the judgment or order appealed from, but if a motion for a new trial or an arrest of judgment has been made within the 10-day period an appeal from a judgment of conviction may be taken within 10 days after entry of the order denying the motion.

Defendant argues that despite the clear mandate of the rule, it is not to be applied rigidly in disregard of fundamental notions of fairness. In fact, especially in this situation where defendant was denied his right to appeal because of ineffective assistance of his counsel, the rule should be relaxed. The state responds that the rule must be adhered to unless excusable neglect is shown wherein an additional 30 days may be granted. The "excusable neglect" section is included under Rule 45(b) "Enlargement of Time"; however, the rule makes clear that no extension is to be given for the period of appeal.[5]

The ten-day time requirement for filing the notice of appeal has been termed "mandatory and jurisdictional." However, many courts have relaxed the requirement in appropriate situations where the untimely appeal had not been due to defendant's error or wilful inadvertence.

In *Fallen v. United States,* 378 U.S. 139 (1964) defendant was convicted of postal law violations. Four days later he appeared for sentencing with his court-appointed attorney. During the hearing defendant requested to appeal as an insolvent. Pursuant to the hearing his attorney suggested defen-

---

[4] This rule has been superseded by Hawaii Rule of Penal Procedure 37(c) (1977). However, the Hawaii Rules of Penal Procedure govern those criminal proceedings commenced after January 1, 1977 and those appeals of judgments entered on or after January 1, 1977. Since defendant's judgment of conviction was entered on July 11, 1974, Hawaii Rule of Criminal Procedure 37(c) still applies.

[5] The current Hawaii Rule of Penal Procedure 37(c) changes this prohibition by allowing an extension of time for appeals on a showing of excusable neglect. As to what constitutes "excusable neglect" within the meaning of the rule *see* Annot., 26 A.L.R. Fed. 569 (1976) *discussing the analogous Federal Rule of Appellate Procedure 4(a).*

dant secure another lawyer to represent him on appeal because his firm did not wish him to undertake any further criminal matters. The next day defendant was transferred to hospital facilities to commence his sentence but was not allowed visitors. Fourteen days later, the clerk of the court received letters from defendant asking for a new trial and for an appeal. The United States Supreme Court remanded the case for disposition on the merits, reversing the Court of Appeals' ruling that the motion and appeal were untimely filed. The Court stated that the restrictive reading of the Rules was unwarranted by the circumstances of the case and continued:

> Overlooked, in our view, was the fact that the Rules are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances. Rule 2 begins with the admonition that "[t]hese rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." That the Rules were not approached with sympathy for their purpose is apparent when the circumstances of this case are examined.

*Id.* at 142.

Other federal courts have relaxed the ten-day requirement for filing where counsel for defendant was at fault. *Sanders v. Craven*, 488 F.2d 478 (9th Cir. 1973) and *Gairson v. Cupp*, 415 F.2d 352 (9th Cir. 1969) involved cases where defendants' court-appointed attorneys failed to advise their clients of the right to appeal in forma pauperis. Although attorneys in both situations represented defendants in their original trials, they were unable to continue their representation on appeal because of the defendants' inability to afford their services. The courts found that the attorneys' conduct raised questions of ineffective assistance of counsel such that consideration of the appeals on the merits should be taken. *See also Blanchard v. Brewer*, 429 F.2d 89 (8th Cir. 1970) (criminal appeal cannot be denied solely because of improper service of appeal notice where state had actual notification of

filing); *Hines v. United States*, 237 A.2d 827 (D.C. App. 1968) (attorney's neglect in filing notice of appeal one day late is ineffective assistance of counsel); *Stewart v. Wainwright*, 309 F.Supp. 1023 (M.D. Fla. 1969) (erroneous advice by counsel to defendant was of such a substantial nature as to deprive defendant of ability to make an informed and intelligent decision on whether to appeal); *Coursey v. Beto*, 301 F. Supp. 740 (N.D. Texas 1969) (defendant was entitled to belated appeal where waiver of right to appeal was based on counsel's discouragement as to likelihood of its success).

A number of state courts have also permitted untimely appeals where the circumstances justify such an action. Counsel in *Shipman v. Gladden*, 453 P.2d 921 (1969) timely prepared and served a notice of appeal but neglected to file it. In authorizing the delayed appeal the Supreme Court of Oregon found that defendant was deprived of his fourteenth amendment right to due process because of the "culpable negligence" of his counsel. The court recognized that under most circumstances, clients must be bound by the acts of their lawyers. However, this rule should be relaxed when mechanical application of this legal proposition leads to harsh results repugnant to notions of fair play and justice. The court stated:

> These results can be even harsher in a criminal case than a civil one since in the latter suit the aggrieved client has, in theory, a malpractice action against his attorney for damages, while in the former no attorney can restore his client's lost liberty.

*Id.* at 926.

Very similar to the present case is *People v. Bailey*, 1 Cal.3d 180, 460 P.2d 974 (1969) in which defendant sought an order permitting him to file a belated appeal. At sentencing defendant discussed the possibility of an appeal with his counsel but was undecided about pursuing an appeal because of concern about serving "dead time" while an appeal was pending. As a result of this misapprehension defendant failed to file a notice of appeal within the ten-day requirement. The California Supreme Court granted the belated appeal stating that although a defendant may waive his right to appeal by

abandoning his request for an appeal, such a waiver must be an informed one.

> [W]here a defendant seeks to abandon his request on the basis of a misapprehension as to the effect of an appeal, which misapprehension is communicated to the attorney, the defendant is entitled to protection. The failure of the attorney to correct the misapprehension, under such circumstances, is equivalent to giving wrong advice. The first requirement of any waiver of statutory or constitutional rights is that it be knowingly and intelligently made.

*Id.* at 978. An even stronger case for granting a belated appeal lies here where defendant's counsel rather than failing to correct a misapprehension as to the effect of an appeal was the source for the misapprehension. *See In Re Parizo*, 404 A.2d 114 (1979) (defendant's two attorneys were each under mistaken belief that other would file notice; rehearing allowed to determine if belated appeal should be granted); *State v. Stice*, 24 Ariz. App. 516, 540 P.2d 135 (1975) (erroneous advice given defendant by probation officer resulting in defendant's foregoing his appeal warrants allowing his delayed appeal.)

We have also seen fit to relax the ten-day rule where justice so warrants. In *In Re Edward J. Carvelo*, 44 Haw. 31, 352 P.2d 616 (1959) defendant-petitioner had been convicted of burglary and immediately after the verdict and sentence requested his court-appointed counsel to take an appeal. However, his counsel failed to do so because of his misunderstanding as to the effect of a current amendment to the statute governing appeals taken in forma pauperis. We allowed the appeal even after the statutory time had expired so that defendant could file an application in circuit court to obtain such a determination.

In *State v. Delaney*, 56 Haw. 444, 540 P.2d 61 (1975) we held an appeal timely when filed after the ten-day period because no notice of entry of judgment was given to defendant's counsel until well after ten days. In *State v. Erwin*, 57 Haw. 268, 554 P.2d 236 (1976) we allowed consideration of defendant's appeal on the merits even after a finding that

timely filing of notice of appeal had not taken place. We stated:

> On the other hand, it is clear that an indigent criminal defendant is entitled, on his first appeal, to court-appointed counsel who may not deprive him of his appeal by electing to forego compliance with procedural rules.

*Id.* at 270.

We also treated as timely an appeal filed late where the lower court's decision was unannounced and no notice of entry of judgment was given. *State v. Ferreira,* 59 Haw. 255, 580 P.2d 63 (1978). Citing *State v. Delaney, supra,* we found that the court clerk's negligence in giving notice of the entry of a judgment or order should not operate to deprive a defendant of his appeal.

In view of the fact that defendant withdrew his appeal based on counsel's erroneous advice and through no fault of his own, we find his waiver was not knowingly and intelligently made and we allow his appeal on the merits.

## II.

Defendant raises two main issues on appeal:

1. Whether the trial court erred in denying his motion for new trial based on "newly discovered evidence."

2. Whether the trial court erred in proceeding with trial in his absence, thereby denying him the right to be present at all stages of his trial in violation of the Fifth and Fourteenth Amendments.

We answer both these questions in the negative and affirm defendant's conviction.

### NEWLY DISCOVERED EVIDENCE

Defendant's motion for a new trial was made pursuant to Hawaii Rule of Criminal Procedure 33 and was based on newly discovered evidence which was presented by one witness at the motion hearing before the circuit court. The new witness, Mr. Edward Reyes, testified that he spoke to one of

the state's witnesses, Mr. Clarence Pacheco, before defendant's trial and learned that Pacheco had testified falsely at trial with respect to his knowledge of defendant's involvement with Pacheco's ex-wife.[6] Defendant argues that had this evidence been presented to the jury, Clarence Pacheco would have been shown as biased against defendant and his "in-

---

[6] At trial Clarence Pacheco testified as follows:

Q. [DEFENSE COUNSEL]: Aileen Pacheco is your ex-wife?
A. Right.
Q. And used to go with Mr. Caraballo?
A. Not that I know of.
Q. Or his brothers?
A. No way.
Q. Now, Aileen Pacheco knows Mr. Caraballo?
A. All right, she does. Yes, she does.
Q. Well, have you heard her speak about Mr. Caraballo?
A. No.
Q. But you reckon that she does know Mr. Caraballo?
A. Well, I reckon it's in the family. My stepson is married to his stepsister.

At the hearing on the motion Reyes testified as to his conversation with Pacheco. Pacheco's conversation directly contradicted his earlier testimony.

[DEFENSE COUNSEL]: Well, we're showing to the court that he had this conversation with Pacheco, downtown, and this occurred sometime in May.
THE COURT: Of what year?
[DEFENSE COUNSEL]: Of 1974.
THE COURT: And what?
[DEFENSE COUNSEL]: And that we are now developing — going into the area of what Pacheco asked Mr. Reyes to do.
THE COURT: All right. Ask him that direct question, you don't have to give the whole history.
Q. [DEFENSE COUNSEL]: What did he ask you to do? What else did he ask you to do?
A. [REYES]: Well, he asked — well, he had this domestic problem and he asked me if I could help him so, well, I wanted to hear the problem. Anyway, he said he — his problem was this other woman and — and the defendant and his ex-wife so, right away, I told him, "How can I help you?" And he said, "First, get rid of this," and he said that if anybody asked me where I got this from, to say that I got it from the defendant. At that time I didn't know the defendant. So I told him, "Why?" You know. He said, "The domestic problem is, you know, too much trouble." He told me this cat was supposed to be having a relationship with his — with his ex-wife.
Q. By "this cat" you mean Caraballo?
A. Yeah, the defendant. So, all in all, I never like getting — I didn't want to get involved, you know, it was more of a family problem, you know, between him and the defendant, actually, you know.

valuable and corroborating testimony" of defendant's actions on the night of the crime would have been less persuasive.

This court in a recent case, *State v. McNulty*, 60 Haw 337, 588 P.2d 438 (1978) established the following requirements for the granting of a new trial based on newly discovered evidence:

(1) The evidence must have been discovered after trial;

(2) Such evidence could not have been discovered before or at trial through the exercise of due diligence;

(3) The evidence must be material to the issues and not cumulative or offered solely for purposes of impeachment; and

(4) The evidence is of such nature as would probably change the result of a later trial.

At best defendant has met only the first requirement. In order to prevail, the movant for a new trial must show that due diligence was used to discover the new evidence before or at trial. *Deponte v. Ulupalakua Ranch*, 49 Haw. 672, 427 P.2d 94 (1967); *Green v. Keolanui*, 30 Haw. 954 (1929). The only evidence supporting the motion consisted of Reyes' affidavit and his oral testimony at the motion hearing. No showing of any affirmative attempts to locate Reyes before trial or to procure similar evidence was made. Thus, defendant did not sustain his burden.

The new testimony must also be material to the issues and not solely for impeachment purposes. Reyes' testimony that Clarence Pacheco lied about his knowledge of defendant and his ex-wife was irrelevant to establishing defendant's guilt for the offenses but only tended to impeach Pacheco's credibility. *Orso v. City and County*, 56 Haw. 241, 534 P.2d 489 (1975); *Gay v. McCandless*, 7 Haw. 365 (1888). Thus it did not meet the requirement of materiality.

Lastly, the motion for new trial may be granted only if the newly discovered evidence is of such a nature that it would probably change the result of a later trial. The potential effectiveness of Reyes' testimony would only serve to undercut Clarence Pacheco's corroboration. However, even without this testimony the jury had before it not only the victim's

firsthand and detailed account of the crime[7] but also the testimony of the examining physician and the victim's sister. Thus, even if Reyes' testimony succeeded in diminishing Pacheco's credibility, the sum of evidence presented to the jury on the criminal acts would not have been appreciably altered. The motion was properly denied.

## PRESENCE AT TRIAL

Defendant urges as his second argument that he was deprived of his right to be present at all stages of his trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Defendant's trial occurred on May 28, 1974 and May 31, 1974. He was allowed to leave the courtroom prior to the impanelling of the jury to relieve back pains caused by a recent accident.[8] The second absence occurred when defendant left the courtroom during the tes-

---

[7] Pacheco's testimony was offered only to corroborate the victim's testimony with respect to the act of sexual intercourse. He did not personally witness the alleged offense and only offered testimony regarding the events preceding and following the offenses. The victim herself testified extensively as to the events of the evening including defendant's assualt on her person. A physician also testified in detail as to her condition following the attack.

[8] The colloquy between defense counsel and the court went as follows:
[DEFENSE COUNSEL]: May we have a short recess?
THE COURT: What's the reason? Will you approach the bench?
(Whereupon, bench conference had, outside the hearing of the prospective jurors.)
[DEFENSE COUNSEL]: Mr. Caraballo is experiencing a great deal of discomfort.
THE COURT: He may leave the room if he wishes. As I said, he could have left any time after the introduction, but when he leaves the court, for him to stand around and go to the clerk's room.
[DEFENSE COUNSEL]: Is there any place where he can lie down?
THE COURT: I don't have any couch or any place. He can be lying on the floor, but —
[DEFENSE COUNSEL]: He's requesting that if he can go home.
THE COURT: No, because we have to have identification during the trial. We can't do that.
[DEFENSE COUNSEL]: I don't know whether he would want to stay here for the trial when the trial starts.
THE COURT: He has to be here for identification purposes. Apart from that, I don't know whether the prosecution will require his presence, but I certainly

timony of Dr. Adams to keep a doctor's appointment for his back injury.[9]

Defendant's right to be present at all stages of his trial is of fundamental importance and is derived from the confrontation clause of the Fifth Amendment to the United States Constitution and made applicable to the states by the due process clause of the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400 (1965). The right has been codified in Hawaii Rule of Criminal Procedure 43.[10] While recognizing

---

will not require his presence myself during his trial if he wants to be absent. I'm willing to go along. But the only thing that I can foresee, at least for identification purpose he must be here.

[DEFENSE COUNSEL]: Well, why don't we get to that when the time arises? Maybe he doesn't want to go home so he can rest.

THE COURT: As I said, he can stop by the courtroom and just ask for me to allow him to leave the courtroom. And I will explain to everybody as to why this request is being asked.

[DEFENSE COUNSEL]: I have since talked to the doctor, since I talked to you, and he says he should be made as comfortable as possible.

THE COURT: Well, as I say, he may leave the room and stay in the clerk's office and make himself as comfortable as he wishes over there.

(Bench conference concluded.)

THE COURT: The defendant is being permitted by the Court to stay outside and make himself comfortable because he seems to experience great deal of discomfort just sitting in one spot in a certain position. So the Court has allowed the defendant to leave the courtroom. And the record will reflect that the defendant has left the courtroom at this time by his own request.

[9] Dr. Adams' testimony followed the testimony of Clarence Pacheco. After Pacheco had completed his testimony a bench conference was called after which the court stated:

THE COURT: The record will show that the defendant has left the courtroom at this time at his request. Ladies and gentlemen of the jury, the Court has permitted the defendant to leave at this time so that he may keep a doctor's appointment in Kailua.

[10] The 1960 version of Rule 43 of Hawaii Rules of Criminal Procedure reads:

The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence. except as otherwise provided by these rules. The defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the

this basic right, the state argues that it was waived because defendant voluntarily absented himself from the courtroom on both occasions.[11] Accordingly, defendant cannot now complain that his constitutional rights were violated.

Defendant then responds that *State v. Okumura*, 58 Haw. 425, 570 P.2d 848 (1977) requires the court to conduct a "weighing test" even when the absence appears voluntary. Appellant in *Okumura* was absent from the courtroom during counsel's closing arguments, the court's instructions to the jury and the rendering of the jury's verdict. He had been injured during an unsuccessful attempt to escape from the courtroom and medical treatment for these injuries was required immediately. We found that appellant's absence was not voluntary and therefore the trial court's denial of his motion for continuance and its proceeding with trial in his absence was erroneous. We noted that the trial judge is required to weigh the competing interests at stake: balance the defendant's right to confront his accusers and other possible prejudice which might result from his absence against the time and expense caused by defendant's efforts to defeat the proceedings by his departure or flight.

The right of the accused to be present during all stages of his trial has been confirmed in a number of cases. *Diaz v. United States*, 223 U.S. 442 (1912); *Lewis v. United States*, 146 U.S. 370 (1892). *Diaz* qualified the right stating the rule as:

> [W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves

---

court, with the written consent of the defendant, may permit arraignment, plea, trial and imposition of sentence in the defendant's absence. The defendant's presence is not required at a reduction of sentence under Rule 35.

[11] The record clearly indicates that defendant's absence was pursuant to his requests: in the first instance to lie down and relieve his back pains, in the second to meet a previously scheduled doctor's appointment.

the court free to proceed with the trial in like manner and with like effect as if he were present.[12]

*Id.* at 455. The United States Supreme Court reaffirmed this rule in *Taylor v. United States*, 414 U.S. 17 (1973) where petitioner appeared on his first day of trial but failed to return for the afternoon session. The court found that Federal Rule of Criminal Procedure 43 withstood constitutional attack and codified the *Diaz* holding. The court also rejected petitioner's argument that it must be demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence. This rule has been adopted in a majority of states. In *People v. Thorpe*, Colo. App., 570 P.2d 1311 (1977) defendant was present in court on the first day of trial but on the following morning failed to appear. Proceedings resumed after a brief continuance but defendant did not reappear until noon on the next day at the discussion of jury instructions. The court found no error in the trial court's proceeding with trial in defendant's absence, citing the *Diaz* rule as applicable. *United States v. Marotta*, 518 F.2d 681 (9th Cir. 1975); *United States v. Peterson*, 524 F.2d 167 (4th Cir. 1975); *United States v. Tortora*, 464 F.2d 1202 (2d Cir. 1972); *Cureton v. United States*, 396 F.2d 671 (D.C. Cir. 1968); *Hanley v. State*, 83 Nev. 461, 434 P.2d 440 (1968). *Cf. State v. Tacon*, 107 Ariz. 353, 488 P.2d 973 (1971) (defendant knowingly waived his presence at trial where he was aware of trial date and fact that trial would proceed without him but chose to stay away).

---

[12] The *Diaz* rule was later incorporated in Federal Rule of Criminal Procedure 43 adopted in 1945. The Advisory Committee Notes to the rule state:

The second sentence of the rule is a restatement of existing law that, except in capital cases, the defendant may not defeat the proceedings by voluntarily absenting himself after the trial has been commenced in his presence. Diaz v. United States, 223 U.S. 442, 455, 32 S.Ct. 250, 56 L.Ed. 500, Ann. Cas. 1913C, 1138; United States v. Noble, D.C. Mont., 294 F.689 — affirmed. 9 Cir., 300 F.689; United States v. Barracota, D.C.S.D.N.Y., 45 F.Supp. 38; United States v. Vassalo, D.C.E.D.Mich., 52 F.2d 699. 4 F.R.D. 405 (1944). Hawaii Rule of Criminal Procedure 43, relied on by the parties was patterned after Federal Rule of Criminal Procedure 43 and therefore we find it appropriate to incorporate the analysis used in the federal rule.

We also adopt the majority rule set out in *Diaz* and find that where defendant has voluntarily absented himself after the trial has begun, this operates as a waiver of his right to be present and the trial may continue as if he were present. This finding is not inconsistent with *Okumura*. Unlike the situation there, defendant here was free on bail and therefore could make his own choices regarding the necessity of his presence at trial.[13] The fact that Okumura was in custody even when he left the courtroom for medical care was crucial to our determination of the involuntariness of his absence. Finally, the state in *Okumura* failed to sustain its burden of showing that defendant's absence was harmless beyond a reasonable doubt.

## PREJUDICE

We recognize that any violation of a defendant's constitutional rights is presumed prejudicial unless rebutted by the prosecution. *State v. Okumura*, 58 Haw. 425, 570 P.2d 848 (1977); *State v. Pokini*, 55 Haw. 640, 526 P.2d 94 (1974); *State v. Yoshino*, 45 Haw. 206, 364 P.2d 638 (1961). Here the state has shown that any error that might have resulted from the court's proceeding in defendant's absence was harmless. As has been pointed out, his absence during the impanelling of the jury occurred only after the prosecution had passed all twelve jurors for cause. Thus, defendant was present when the state conducted its voir dire on the prospective jurors. Furthermore, defense counsel knew that defendant was wait-

---

[13] In *Okumura*, defendant's injuries required immediate treatment although the record is unclear what the exact extent of the injuries were. Defendant was in custody before his attempted escape and remained so afterwards during his period of medical treatment. Defendant in this case was free on bail pending disposition of the charges against him. His back injuries were totally unrelated to the events of the trial or the incident in question and were such that his doctor indicated "he should be made as comfortable as possible." As a result, defendant was permitted to leave the courtroom and lie down in the clerk's office. However, he was free to reenter the courtroom at anytime; his counsel knew he could be easily reached.

ing just outside the courtroom in the clerk's office and therefore was readily available for consultation during its own questioning.

Defendant's absence later during the trial itself also occurred at a non-crucial point of the proceedings. Defendant requested leave from the courtroom to keep a doctor's appointment during the testimony of the prosecution's last witness, Dr. Edwin Adams. Dr. Adams was the City and County physician who examined the victim after the incident to determine her condition. His testimony consisted of an evaluation of the victim's external and internal condition.[14] Defendant would not have made a significant contribution during this portion of the state's case since this testimony involved objective medical evidence. Finally, the non-prejudicial effect of defendant's absence is highlighted by the fact that the judge clearly informed the jury as to the reasons for defendant's absences.[15] Consequently, they were never under any misapprehension that defendant's absence was due to flight or fear because of guilt. We find defendant's arguments to be unpersuasive.

Affirmed.

*Michael K. Tateishi,* Deputy Public Defender, for defendant-appellant.

*Albert H. Esposito,* Deputy Prosecuting Attorney, for plaintiff-appellee.

---

[14] Dr. Adams testified as to the victim's exterior condition which showed signs of abrasions as well as to the presence of sperm in the vaginal area.

[15] *See* footnotes 8 and 9 *supra.*