**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000866
28-OCT-2021
07:52 AM
Dkt. 166 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
DOUGLAS M. CARDENAS, Defendant-Appellant


NO. CAAP-17-0000866


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1PC151000320)


OCTOBER 28, 2021


GINOZA, CHIEF JUDGE, LEONARD AND NAKASONE, JJ.


OPINION OF THE COURT BY NAKASONE, J.

Defendant-Appellant Douglas M. Cardenas (**Cardenas**) appeals from the Judgment of Conviction and Probation Sentence, and Notice of Entry (**Judgment**) filed on January 12, 2016 by the Circuit Court of the First Circuit (**Circuit Court**).[1] Following a jury trial, the Circuit Court convicted Cardenas of Interference with the Operator of a Public Transit Vehicle (**Interference With Bus Operator**) in violation of Hawaii Revised Statutes (**HRS**) §

---

[1] The Honorable Rom A. Trader presided.

711-1112(1)(b) (2014),[2] and sentenced Cardenas to probation with a twelve-day jail term with credit for time served.

On appeal, Cardenas contends that: (1) the jury instruction on the Interference With Bus Operator offense was prejudicially erroneous and misleading because it omitted the requisite state of mind for commission of the offense; (2) the omission of an Arceo[3] unanimity instruction was prejudicially erroneous and misleading; and (3) the prosecutor committed misconduct in closing argument by arguing that Cardenas was the only person who had an incentive to lie.

Under the circumstances of this case, we exercise jurisdiction over Cardenas's late-filed appeal where his counsel was plainly ineffective for failing to timely file an appeal of the judgment, and in the interest of justice where the record also reflects Cardenas received inaccurate information regarding the deadline for an appeal. We vacate and remand for a new trial due to prosecutorial misconduct.

**I. BACKGROUND**

On March 2, 2015, the State charged Cardenas by felony information with Interference With Bus Operator as follows:

---

[2]    In relevant part, HRS § 711-1112(1)(b) provides that:

       (1) A person commits the offense of interference with the operator of a public transit vehicle if the person interferes with the operation of a public transit vehicle or lessens the ability of the operator to operate the public transit vehicle by:

       ....

            (b) Threatening, by word or conduct, to cause bodily injury to the operator of the public transit vehicle with the intent to terrorize, or in reckless disregard of the risk of terrorizing the operator of the public transit vehicle.

[3]    State v. Arceo, 84 Hawaiʻi 1, 30, 32-33, 928 P.2d 843, 872, 874-75 (1996) held that the right of an accused to a unanimous jury verdict in criminal cases, guaranteed under the state and federal constitutions, requires that if the prosecution presents evidence of separate and distinct culpable acts, it must elect which act underlies the charge, or the trial court must issue a specific unanimity instruction.

> On or about February 27, 2015, in the City and County of Honolulu, State of Hawaii, **DOUGLAS M. CARDENAS**, did interfere with the operation of a public transit vehicle or lessen the ability of the operator to operate the public transit vehicle by:  threatening, by word or conduct, to cause bodily injury to Ernest Lake, the operator of the public transit vehicle in reckless disregard of the risk of terrorizing said operator of the public transit vehicle, thereby committing the offense of Interference with the Operator of a Public Transit Vehicle in violation of Section 711-1112(1)(b) of the Hawaii Revised Statutes.

(Bolding in original).

### Trial Proceedings

The following facts were adduced at the September 14, 2015 jury trial, in which Cardenas was represented by a deputy public defender.  At 8:00 p.m. on February 27, 2015, Ernest Lake (**Lake**), a bus driver for Oahu Transit Services, City and County of Honolulu (**The Bus**), was driving on Waiʻalae Avenue.  Lake was driving a "kneeling" bus that could be lowered to enable passengers to board straight into the bus at sidewalk level.  The Bus's policy is that bus drivers automatically kneel the bus for passengers who are children, elderly, carrying bags, using disability equipment, or upon request.  As Lake made an authorized stop near Chaminade University, he could see 53-year-old Cardenas, holding a blue pass for seniors or persons with disabilities, even though Cardenas was not using disability equipment.  Cardenas boarded first, said nothing to Lake, followed by two other passengers.  Cardenas proceeded towards the rear of the bus.

Lake was about to pull out into main traffic when he noticed, in the rear view mirror, that Cardenas was now walking towards the front of the bus.  He stopped about an arm's length away from Lake, straddling the yellow "standing line," behind which passengers are required to stand.  A bus driver could be cited for driving with passengers standing in front of the standing line.  Visible from where Cardenas stood, were yellow signs reading, "FOR PASSENGER SAFETY FEDERAL LAW PROHIBITS OPERATION OF THIS BUS WHILE ANYONE IS STANDING FORWARD OF STAIRS LINE," and "CAUTION FOR YOUR SAFETY DO NOT TALK TO OPERATOR WHILE BUS IS IN MOTION."

According to Lake, Cardenas stated to Lake: "I have a disabled bus pass. Why didn't you F'in kneel the bus?" Lake responded, "Sorry, sir, but we only kneel the bus upon request or visual, and just to let you know, it's only upon request that we do it. If you asked for it, I would have lowered it." Cardenas took an aggressive stance and said, "Well, I am disabled. You do what I F'n say." Lake suggested that Cardenas take a seat, and Cardenas went to sit down in the mid-section of the bus, muttering. As Lake pulled away from the curb, Cardenas again came to the front, again straddling the standing line and shouted, "I want to add one thing. I'm not a kid or a female you can boss around or you can push around. I'm not that F'in blah, blah, blah." Lake again asked Cardenas to take a seat and Cardenas replied, aggressively and loudly, "I'm going to F'in kick your ass." Lake warned Cardenas that if he continued to talk to him that way while he was operating the bus, he was "going to call," to which Cardenas responded, "Go ahead and F'in call 'em. What the hell I care for? What the hell I care? Call 'em." Lake pressed the priority button which summoned the police; he also told Cardenas to stop what he was doing. Lake then stopped and secured the bus, called his supervisor, turned on the emergency flashers, and exited the bus to distance himself from Cardenas; Cardenas and the other passengers remained on board. A few minutes later Honolulu Police Department (**HPD**) police officers arrived and escorted Cardenas off the bus; Cardenas was upset and yelling at the police as they arrested him. Lake asked the remaining passengers if anyone wanted to give a statement, but no one volunteered.

HPD Officer William Ellis (**Officer Ellis**) testified that he was dispatched to tend to the "bus operator call on Waialae Avenue." He spoke to Lake first, and then to Cardenas, who was still seated on the bus. Cardenas was taken off the bus and seated on the sidewalk. When Officer Ellis informed Cardenas that Cardenas would be arrested for interfering with the bus operator, Cardenas became "upset" and was "yelling," arguing, "Why am I getting arrested?"

Cardenas testified in his own defense as follows. Cardenas sustained an injury from a 1987 vehicular accident, resulting in chronic vertigo for which he took medication three times a day. Thus, boarding the bus was difficult when Lake did not kneel it for him. Cardenas held his pass in a way that the driver could see he was prepared to board the bus. Cardenas boarded first, waited until the two passengers behind him passed, then walked up to the "do not pass front line," which Cardenas acknowledged standing beyond may interfere with the driver's operation of the vehicle, and confronted Lake as to why Lake did not kneel the bus. Lake aggressively responded, "'Cause I don't have to." Cardenas remarked, "Well, that's kinda sharp. Why are you talking like that," to which Lake answered, "Shut up and sit down." This upset Cardenas, who felt intimidated and perturbed at the way Lake addressed him; nonetheless, he sat down. At the next stop Cardenas approached the standing line again and told Lake that he did not appreciate the way Lake spoke to him, that it was out of line. Cardenas also told Lake that he has a legitimate bus pass and a legitimate disability. Lake had not driven a full block when he pulled the bus over, unbuckled his seatbelt, jumped out of his seat, and got in Cardenas's face without saying anything. Cardenas asked, "Are you threatening me? Are you physically threatening me right now? Because you can't do that." Cardenas turned to look at the passengers and then back to Lake, who glared at him and walked off the bus. Cardenas admitted speaking "sternly" to Lake, and conceded that he should not have initially reacted to Lake's "insults," but denied raising his voice, swearing, or threatening to "kick his ass." Cardenas also acknowledged there was a sign advising not to speak to the driver while the bus was in motion, and that he continued to talk to Lake when the bus started moving.

On September 16, 2015, during the settling of jury instructions, the Circuit Court withdrew its proposed Jury

Instruction No. 35, the "Unanimity Instruction."[4]  Cardenas did not object to the withdrawal.

During closing argument, the State argued that it had proved that Cardenas interfered with the operation of the bus by threatening Lake, and also urged that Cardenas was not credible because Cardenas was the defendant:

> [STATE]:  Instead, what you're here to determine and the question that you must answer is did the defendant, Douglas Cardenas, threaten Ernest Lake either by word or conduct.
>
> And the answer to that question is yes to both, both words, "I'm going to fuckin' kick your ass," and his conduct, standing within arm's reach of him while the bus is moving, as Ernest described it, posturing up in an aggressive stance right next to Ernest Lake as he was driving that bus.
>
> . . . .
>
> And, finally, the probability of Ernest's testimony.  And, ladies and gentlemen, this testimony makes perfect sense, and it's completely in line with what a reasonable person would do particularly in the sense that he was required to stop the bus because the defendant presented a safety issue against both him and his passengers when he said, "I'm going to fuckin' kick your ass."
>
> . . . .
>
> Now, of course, it is the defendant who was at trial.  You are here for State of Hawaii versus Douglas Cardenas.  He has the most to lose in this case.  He has the biggest incentive to be untruthful.  He's the only person in this trial that has any incentive to be untruthful.
>
> . . . .
>
> Ernest told you, Officer Ellis told you, even the defendant told you that the bus had to be stopped after the incident between he and Mr. Lake.  He interfered with the operation of that bus.  He forced all of the passengers to get on another bus, and he jeopardized both

---

[4]    Instruction No. 35 was based on Hawaiʻi Pattern Jury Instructions--Criminal (**HAWJIC**) 8.02, also known as the "unanimity instruction," which states:

> The law allows the introduction of evidence for the purpose of showing that there is more than one [act] [omission] [item] upon which proof of an element of an offense may be based.  In order for the prosecution to prove an element, all twelve jurors must unanimously agree that [the same act] [the same omission] [possession of the same item] has been proved beyond a reasonable doubt.

> Ernest's safety and the safety of his passengers by threatening him on that day.
>
> Again, as I said earlier, the State has proven that the defendant, by both word or conduct, threatened to cause bodily injury against Ernest Lake. The threat, "I'm gonna fuckin' kick your ass," the conduct, his posture, his tone, his stance, being across that yellow line within arm's reach of the defendant while he was operating the vehicle.

(Emphasis added). The transcript reflects that Cardenas did not object.

The jury found Cardenas guilty as charged the same day, September 16, 2015. After the jury was discharged, Cardenas expressed his desire for an appeal to the Circuit Court as follows:

> [THE COURT:] And the decisions I make as far as sentencing does factor in the contents of that report to a certain degree, but, also, I will be listening to arguments by both sides and also considering any statements that you might make at that time. And so I just want you to be fully aware that we still have further process to go before this matter is concluded.
>
> And to the extent that, as you said –- indicated you're disappointed, you're encouraged to consider any and all other options to include appeal, if you'd like to.
>
> DEFENDANT CARDENAS: May I address the Court with that? I would like to file an appeal for ineffective counsel.
>
> THE COURT: All right. That's something you'll need to take up with your attorney, [deputy public defender], and as of right now, that's not an appropriate matter to address at this time. Okay. All right. Thank you very much, and I will see you in November.
>
> DEFENDANT CARDENAS: Yes, sir.

(Emphasis added).

On September 25, 2015, the deputy public defender filed a Motion to Withdraw as Counsel (**Motion to Withdraw**). The motion contained a September 22, 2015 declaration by withdrawing counsel that stated, "On September 16, 2015 a guilty verdict was returned in the above entitled case. Upon setting the sentencing date, Defendant indicated to the court that he wanted to appeal the case based on ineffective assistance of counsel." (Emphasis added).

At the October 13, 2015 hearing on the motion, the Circuit Court granted the deputy public defender's motion to

withdraw as counsel.  On October 14, 2015, the Circuit Court entered an Order Appointing Counsel, appointing counsel (**First Appointed Counsel** or **Counsel**) to represent Cardenas.

On January 12, 2016, the Circuit Court sentenced Cardenas to twelve days of jail with credit for time served and referred him to four years of Hawaiʻi Opportunity Probation with Enforcement (**HOPE**) probation.  Cardenas was represented by First Appointed Counsel at the sentencing hearing.

### **HOPE Probation Proceedings**

Following the January 12, 2016 sentencing hearing and entry of Judgment, the record reflects that the Circuit Court[5] for HOPE probation (**HOPE Circuit Court**) held a HOPE warning hearing on February 3, 2016.  The transcript reflects that First Appointed Counsel was not present with Cardenas because, as the HOPE Circuit Court explained, the presence of defense counsel "is waived during the [HOPE] warning[.]"[6]  During the HOPE warning hearing, Cardenas raised the issue of the absence of counsel at the hearing, and inquired how to file an appeal:

> THE COURT:  Do you understand everything that I've just said to you about HOPE probation?
>
> DEFENDANT CARDENAS:  Yes, I do.
>
> THE COURT:  Do you have any questions about what your agreement with me is?
>
> DEFENDANT CARDENAS:  Yes, I do.
>
> THE COURT:  What are they?
>
> DEFENDANT CARDENAS:  I'm curious why I'm in this courtroom instead of standard provision because my case had nothing to do with alcohol or drugs; and the only test given to me, there was a zero result.  So I'm feeling like I'm being -- I'm being, you know, set aside.
>
> THE COURT:  I see that you're before me on an interference case.
>
> DEFENDANT CARDENAS:  That's correct.  Yes, sir.

---

[5]  The Honorable Edward H. Kubo, Jr. presided over the HOPE probation proceedings.

[6]  We do not express any opinion as to the propriety of the absence of defense counsel at this HOPE warning hearing.

THE COURT:  That's a Class C felony.

DEFENDANT CARDENAS:  Yes, sir, it is.

THE COURT:  So I have also been receiving people who have been assigned to HOPE who also may have anger issues.

DEFENDANT CARDENAS:  That is the case.  I was asked to see anger management.

THE COURT:  So you may go downstairs; and if -- and if they determine that drugs or alcohol is not an issue in this case, then -- then your -- your program will be a little bit different.

DEFENDANT CARDENAS:  Okay.  So you're saying I need to speak to my probation officer about this?

THE COURT:  Yes.

DEFENDANT CARDENAS:  Very good.
Last thing:  Why was I not allowed to have representation here?

THE COURT:  You have -- you can call representation --

DEFENDANT CARDENAS:  I was assigned one by the court, but he's not here.

THE COURT:  Yes.  Because the presence of the public defender is waived during the warning, and this is just a warning.

DEFENDANT CARDENAS:  How do I file an appeal?

THE COURT:  You can file at any time.

DEFENDANT CARDENAS:  Because, again, as I mentioned, the reason that I don't believe I belong in this courtroom is one grounds for my appeal.  The other one would be ineffective counsel.

THE COURT:  Then you need to contact the probation office -- officer; and after contacting the probation officer, your next job is to reach out and talk to your attorney and take it from there.

DEFENDANT CARDENAS:  Very good, sir.
Thank you very much for that information.

THE COURT:  And if there's any further problems after that, you have the right to -- to go over the attorney's head to the attorney's boss if you feel that you're not getting complete -- if you're not completely satisfied with the results given to you by your attorney.

DEFENDANT CARDENAS:  Yes, of course.

THE COURT:  Okay.

(Emphases added).  The HOPE Circuit Court told Cardenas he could file an appeal "at any time."

At the point the February 3, 2016 HOPE warning hearing occurred, Cardenas's deadline to file an appeal from the January 12, 2016 Judgment had not yet expired. The 30-day deadline was February 11, 2016. No notice of appeal was filed by the February 11, 2016 deadline.

The circuit court record reflects that the next circuit court proceeding that occurred was on November 7, 2017, for a Motion for Modification of the Terms and Conditions of Probation, for Cardenas's alleged failure to report to his probation officer First Appointed Counsel represented Cardenas at this hearing. Cardenas, with First Appointed Counsel, admitted to the violation and waived his right to a contested hearing on the motion. The HOPE Circuit Court counseled and released Cardenas to continue on HOPE probation, without sanction, after hearing Cardenas's explanation for missing the probation appointment. The HOPE Circuit Court entered its November 7, 2017 Order Granting Motion for Modification of Terms and Conditions of Probation (**Order Granting Modification**).

**Appellate Proceedings**

On December 7, 2017, almost twenty-two months after the February 11, 2016 appeal deadline for the January 12, 2016 Judgment had passed, Cardenas filed a Notice of Appeal through First Appointed Counsel, from the November 7, 2017 Order Granting Modification.

On January 31, 2018, First Appointed Counsel filed a motion for withdrawal and substitution of counsel, in which Counsel stated in part, "Upon conversation with [Cardenas], it is apparent that he wishes to increase the scope of this appeal."

On February 8, 2018, this court granted First Appointed Counsel's motion for withdrawal and substitution of counsel and temporarily remanded the case for the appointment of substitute counsel.

On March 2, 2018, the Circuit Court appointed substitute counsel (**Second Appointed Counsel**) to represent Cardenas.

On March 19, 2018, Cardenas filed a Motion for Leave to File an Amended Notice of Appeal to include the January 12, 2016 Judgment because, according to Second Appointed Counsel, Cardenas wished to appeal from the January 12, 2016 Judgment rather than the November 7, 2017 Order Granting Modification; Cardenas's failure to timely file a notice of appeal from the January 12, 2016 Judgment was First Appointed Counsel's fault; Cardenas would not otherwise be allowed to appeal from the January 12, 2016 Judgment; and because "Hawai'i appellate courts have consistently held that 'the interest of justice' requires that counsel's failure to comply with procedural rule requirements should not deprive the defendant of his right to appeal" in a criminal case.

On April 2, 2018, this court issued an Order to Show Cause (**OSC**) to First Appointed Counsel to explain why the Notice of Appeal from the January 12, 2016 Judgment was not timely filed, and also granted Cardenas's request to allow a first amended notice of appeal to be filed.

On April 4, 2018, a First Amended Notice of Appeal was filed, which purported to appeal from the January 12, 2016 Judgment. Calculating the deadline from the February 11, 2016 appeal deadline to the December 7, 2017 date when the initial Notice of Appeal was filed, Cardenas's appeal was 665 days late.

On April 12, 2018, First Appointed Counsel responded to the OSC[7] and declared, *inter alia*, that: First Appointed Counsel

---

[7]     First Appointed Counsel's April 12, 2018 Amended Declaration of Counsel Regarding Order to Show Cause (**OSC Declaration**) states in full as follows:

      1.    I was one of the court-appointed counsel for Defendant-Appellant Douglas M. Cardenas in the instant case.

      2.    I was appointed to represent him regarding his Circuit Court criminal matter in October 2015.

      3.    During that time, we did briefly discuss his sentencing and his concerns regarding the potential for incarceration in his case.

      4.    My phone log indicates that there were some calls made by me to him and some calls made by him to me during this time.

      5.    Most if not all of our conversations took place at

(continued...)

[7](...continued)
court rather than my office or at any other location.

6. Defendant-Appellant expressed to me that he was very concerned that he might do some amount of prison time for his offence.

7. His sentencing date was continued to January 12, 2016.

8. During this time on his behalf, I engaged in some brief negotiation with the prosecutor's office regarding the sentencing time.

9. I do recall that on January 12, 2016, there was some discussion with Defendant-Appellant regarding ineffective assistance of counsel and his desire to pursue this issue. However, this particular issue did not seem to be his primary concern. His main concern at this hearing was his sentence and whether he would go to prison.

10. Through his new counsel, Defendant-Appellant states that he told me that I was appointed to file the notice of appeal based upon ineffective assistance of counsel and that I understood this purpose.

11. I disagree with this allegation. My primary objective was to get the best possible sentence for Defendant-Appellant.

12. During the sentencing hearing, I recall that Defendant-Appellant was angry and agitated about the events. He appeared not wanting to discuss this with me due to his emotional state.

13. Immediately prior to the sentencing hearing, I recall some discussion about a possible appeal regarding ineffective assistance of counsel by Mr. Cardenas's former public defender counsel, but this discussion was not in depth or in any specific detail.

14. Throughout this entire process, we had no discussion as to the specific issues regarding his former public defender counsel.

15. Furthermore, I have no recollection of ever having such a discussion.

16. During the sentencing hearing discussions at court, it became apparent Defendant-Appellant did not want to listen to what I had to say or take any of my advice that was offered.

17. At the formal sentencing hearing, Mr. Cardenas was sentenced to 4 years of HOPE probation and was not incarcerated for any length of time.

18. After he received his sentence, he did not communicate with me and abruptly left the courtroom.

19. Mr. Cardenas states I offered to discuss the case with him at my office and that he declined to do so. This means that I told him to stop by the office and that

(continued...)

[7](...continued)

he did want to do so.

20. My best recollection is that we did not have any arrangement to discuss these issues in my office after the sentencing hearing.

21. After he got sentenced, he abruptly left the courtroom when he was excused, therefore we had no substantive discussion on the issue of ineffective assistance of counsel.

22. However, it did seem that he was relieved that his sentence did not include any incarceration period.

23. In the several weeks after his sentencing hearing, I did not receive any letter, email, text or other substantive communication with Defendant-Appellant.

24. I have examined my phone log and found that in early Feb 2016, he did call my office and left a "call me back" message with my answering service. However, there was no substantive discussion with him. He did not follow up on this Feb 2016 message. I did not get anything more detailed from him during the remainder of 2016.

25. Mr. Cardenas left a brief message in Jan 2017 stating that he "wants an appeal" without any specifics. He did not follow up on this Jan 2017 message. I did not get anything more detailed from him during 2017 at that time or ever.

26. Mr. Cardenas claims that we communicated sometime after his sentencing and that he was informed that his appeal was being handled.

27. I did not have any sort of conversation with Mr. Cardenas with him at all until the November 2017 court hearing.

28. Other that [sic] those two messages, he did not call me, write me, email me, stop by my office, or otherwise communicate with me.

29. In fact, Defendant-Appellant and I did not directly communicate until November 7, 2017.

30. After the November 7, 2017 hearing, Defendant-Appellant told me that the purpose in my appointment was to file an appeal regarding ineffective assistance of counsel and that was why I was appointed.

31. When he told me this, I was extremely concerned as there was no understanding that I would pursue this issue on his behalf.

32. I sought the advice of multiple criminal law practitioners about what could be done at this stage.

33. I was informed that one could still file a HRCP [sic] Rule 40 Motion regarding the issue of ineffective assistance of counsel.

(continued...)

[7](...continued)

34. The steps to do a Rule 40 motion were discussed with other attorneys who understood the process.

35. At the time, it was felt that the best course of action was to analyze the case and see what could be done to remedy the situation.

36. On his behalf, I decided to file a Notice of Appeal on December 7, 2017 even though it might only cover the November 8, 2017 hearing.

37. Defendant-Appellant called my office on or about January 10, 2018. From our brief conversation I realized that he did not want to hear any advice that I was going to provide him and that he didn't want to hear my opinions.

38. At that moment, I realized that what Defendant-Appellant really wanted was to expand the scope of the appeal.

39. It seemed apparent that a careful analysis of the case through the transcripts could either support an appeal, a Rule 40 Motion, or some other remedy.

40. The transcripts were ordered and reviewed by me.

41. After much discussion of the case and situation with many other attorneys, I came to a decision that there was far too much conflict with the client to fully represent him.

42. In my professional judgement, I came to the decision to withdraw from the case in order to avoid possible conflicts of interest.

43. I have done many appeals in the past and know the importance of filing the Notice of Appeal in a timely manner.

44. In this case, it appears that communication between counsel and client broke down.

45. Defendant-Appellant refused to meet with me after he was sentenced.

46. Defendant-Appellant didn't want to hear any of my advice at his sentencing hearing.

47. It is my understanding that the one method to address ineffective assistance of counsel is a non-appeal approach by filing a Rule 40 motion.

48. In that sense, Defendant-Appellant can still address concerns he had regarding his trial counsel as it seems to be his main concern now.

(Emphases added).

14

disagreed with Cardenas's claim that Counsel "was appointed to file the notice of appeal based upon ineffective assistance of counsel;" Cardenas refused Counsel's advice and "abruptly left the courtroom" following the January 12, 2016 sentencing without communicating with Counsel; that Cardenas's "main concern" at the sentencing hearing was regarding his sentence and "whether he would go to prison" and that there was "no substantive discussion on the issue of ineffective assistance of counsel;" that Cardenas called Counsel in early February 2016 and left a "call me back" message, but Cardenas did not follow up on this message; Cardenas left a message for Counsel in January 2017 stating that he wanted to appeal but did not specify what he wanted to appeal; and Cardenas did not communicate directly with Counsel until the November 7, 2017 hearing on the Motion for Modification, to indicate to Counsel that he wanted to appeal.[8]  However, the OSC Declaration also acknowledges, in contradictory fashion, that on and before the sentencing date, First Appointed Counsel and Cardenas did discuss a possible appeal regarding ineffective assistance of counsel.

On April 24, 2018, based on First Appointed Counsel's response, we took no action on the OSC.

## II. DISCUSSION

**A.** **We review Cardenas's untimely appeal due to First Appointed Counsel's plainly ineffective failure to perfect Cardenas's appeal and in the interest of justice**.

The State argues in its Answering Brief that First Appointed Counsel's OSC Declaration shows that Cardenas's failure to file a timely notice of appeal appears to be Cardenas's fault rather than Counsel's fault; and thus, a post-conviction petition for relief pursuant to Hawaiʻi Rules of Penal Procedure (**HRPP**)

---

[8]     First Appointed Counsel's OSC Declaration does not indicate whether  Counsel called, or attempted to call, Cardenas back after Counsel received the February 2016 "call me back" phone message; and the OSC Declaration also does not indicate whether First Appointed Counsel attempted to contact Cardenas after Cardenas's January 2017 message regarding an appeal.

Rule 40[9] is the more appropriate vehicle to address Cardenas's contentions.  We do not agree that the OSC Declaration, and the remaining record, show that Cardenas himself was responsible for his counsel's failure to timely appeal the Judgment.

Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(b)(1) provides:  "In a criminal case, the notice of appeal shall be filed within 30 days after entry of the judgment or order appealed from."  Thus, Cardenas's deadline to appeal the January 12, 2016 Judgment was February 11, 2016; yet the appeal was not filed until 665 days later, by First Appointed Counsel.

The existence of jurisdiction is a question of law. State v. Uchima, 147 Hawaiʻi 64, 72, 464 P.3d 852, 860 (2020) (quoting Lingle v. Hawaii Gov't Empls. Ass'n, AFSCME, Local 152, 107 Hawaiʻi 178, 182, 111 P.3d 587, 591 (2005)).  With regard to

---

[9]     HRPP Rule 40(a)(1) provides in pertinent part:

> **(a)  Proceedings and Grounds.**  The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal.  Said proceeding shall be applicable to judgments of conviction and to custody based on judgments of conviction, as follows:
>
> *(1) From Judgment.*  At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:
>
> (i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawaiʻi;
>
> (ii) that the court which rendered the judgment was without jurisdiction over the person or the subject matter;
>
> (iii) that the sentence is illegal;
>
> (iv) that there is newly discovered evidence; or
>
> (v) any ground which is a basis for collateral attack on the judgment.
>
> For the purposes of this rule, a judgment is final when the time for direct appeal under Rule 4(b) of the Hawaiʻi Rules of Appellate Procedure has expired without appeal being taken, or if direct appeal was taken, when the appellate process has terminated, provided that a petition under this rule seeking relief from judgment may be filed during the pendency of direct appeal if leave is granted by order of the appellate court.

untimely appeals, the "general rule" is that "compliance with the requirement of timely filing of a notice of appeal is jurisdictional, and we must dismiss an appeal on our motion if we lack jurisdiction." Id. at 77, 464 P.3d at 865 (internal quotation marks omitted) (citing State v. Knight, 80 Hawaiʻi 318, 323, 909 P.2d 1133, 1138 (1996) (quoting Grattafiori v. State, 79 Hawaiʻi 10, 13, 897 P.2d 937, 940 (1995))). However, the Hawaiʻi Supreme Court has expressed that "[w]hile the rule in isolation appears inflexible, this court has allowed untimely appeals when 'defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction in the first instance.'" Id. (citations omitted). The Uchima Court noted State v. Knight and State v. Caraballo as specific examples where untimely appeals were allowed for these situations:

> In State v. Knight, the defendant filed the notice of appeal from the trial court's judgment of conviction twenty-four days after the filing deadline. 80 Hawaiʻi at 323, 909 P.2d at 1138. In an affidavit attached to the statement of jurisdiction, counsel for the defendant averred that he prepared and signed the notice of appeal prior to the due date, but counsel discovered that the notice of appeal had not been filed when he returned from a business trip. Id. We held that the defendant was entitled to the effective assistance of counsel who may not deprive the defendant of an appeal by failing to comply with established deadlines. Id. at 323-24, 909 P.2d at 1138-39. Finding that it was in the interest of justice to address the merits of the defendant's appeal, this court declined to dismiss the appeal. Id. at 324, 909 P.2d at 1139.
>
> In State v. Caraballo, the defendant withdrew his appeal based on advice from counsel. 62 Haw. 309, 310, 615 P.2d 91, 93 (1980). After the period for filing the notice of appeal expired, the defendant learned that counsel's advice was erroneous and thereafter filed a notice of appeal and a motion for leave to appeal in forma pauperis. Id. at 310-11, 615 P.2d at 93-94. In deciding to consider the case, this court noted that, while the "time requirement for filing the notice of appeal has been termed 'mandatory and jurisdictional,'" several federal and state courts had "relaxed" the timeliness requirement for filing a notice of appeal when counsel for the defendant was at fault. Id. at 312-15, 615 P.2d at 94-96. Reasoning that the untimely nature of the appeal was due to counsel's erroneous advice, we considered the defendant's appeal on the merits. Id. at 316, 615 P.2d at 96.

Id. Thus, our case law "has allowed an appeal to proceed despite an untimely filing of a notice of appeal when defense counsel has

inexcusably or ineffectively failed to perfect an appeal."  Id. at 78, 464 P.3d at 866.

### 1.    First Appointed Counsel's failure to perfect an appeal when Counsel knew that Cardenas desired an appeal, was plainly ineffective.

In Maddox v. State, the supreme court adopted the requirement that it is "the responsibility of defense counsel in a criminal case to consult with a client regarding an appeal and to undertake the procedural steps to effectuate the appeal upon the client's request."  141 Hawaiʻi 196, 204, 407 P.3d 152, 160 (2017) (citation omitted).  HRS § 802-5(a) (2014 & Supp. 2016),[10] which sets forth a statutory right to appointed counsel for indigent defendants like Cardenas, "imposes a duty on court-appointed counsel to consult with a defendant following a final order or judgment to determine whether the defendant wishes to appeal, as well as a duty to diligently fulfill the procedural requirements of appeal if the defendant elects to appeal."  Id. at 203, 407 P.3d at 159.  Defense counsel in a criminal case has a duty "to explain to the defendant the meaning and consequences of the court's judgment and the client's right to appeal . . . ." Id. at 204, 407 P.3d at 160.

The supreme court held that Maddox was entitled to a hearing on his HRPP Rule 40 petition that raised colorable claims, *inter alia*, of ineffective assistance of counsel due to trial counsel's failure to initiate an appeal from a circuit court order dismissing his case without prejudice, where trial counsel allegedly told Maddox that his representation of Maddox

---

[10]    In Maddox, the Court construed HRS § 802-5(a) (2010), which provides:

> [W]hen it shall appear to a judge that a person requesting the appointment of counsel satisfies the requirements of this chapter, <u>the judge shall appoint counsel to represent the person at all stages of the proceedings, including appeal, if any</u>.  If conflicting interests exist, or if the interests of justice require, the court may appoint private counsel[.]

(Emphasis added).  The 2015 amendment to the statute added the language "Except as provided in section 334-126(f)" to the beginning of the statute; the remainder of the statute remains the same.  HRS § 802-5(a).

terminated when the court dismissed the case.  141 Hawaiʻi 196, 407 P.3d 152.  The Maddox Court concluded, "Consequently, we hold that when a defendant is denied an appeal because of a failure or omission of defense counsel, a defendant need not demonstrate any additional possibility of impairment to establish that counsel was ineffective under article I, sections 5 and 14 of the Hawaiʻi Constitution."  Id. at 206, 407 P.3d at 162.

While Maddox involved an appeal from the denial of a Rule 40 petition without hearing, this appeal does not arise out of a Rule 40 petition.  However, we are not exclusively confined to the procedural vehicle of a Rule 40 petition to address Cardenas's late appeal.  Under Uchima, an appellate court may rule on an ineffective assistance claim that is "plain from the record" without requiring a Rule 40 petition, under certain circumstances where the "interest of justice" warrants doing so. 147 Hawaiʻi at 82-83, 464 P.3d at 870-71.  The Uchima Court explained:

> Hence, Uchima did not receive effective assistance of counsel with regard to the timely filing of his Application. Although Uchima may assert an ineffectiveness assistance claim through the initiation of an HRPP Rule 40 proceeding, the record is clear that Uchima's counsel intended to file the Application and that but for counsel's error or omission the Application would have been timely filed.  This court has previously ruled on ineffective assistance claims without requiring a post-conviction proceeding when the ineffective assistance of counsel was plain from the record. See, e.g., [State v. Pacheco, 96 Hawaiʻi 83, 102, 26 P.3d 572, 591 (2001)] (holding that the record on appeal conclusively established that counsel was ineffective); [State v. Aplaca, 74 Haw. 54, 72, 837 P.2d 1298, 1307-08 (1992)] (concluding counsel provided ineffective assistance based on a review of the record).  Requiring Uchima to proceed with an HRPP Rule 40 petition under the facts of this case would only unnecessarily prolong final determination of Uchima's appeal and result in an inefficient use of judicial resources.  [State v. Silva, 75 Haw. 419, 438-39, 864 P.2d 583, 592 (1993)] ("[I]n some instances, the ineffective assistance of counsel may be so obvious from the record that [an HRPP] Rule 40 proceeding would serve no purpose except to delay the inevitable and expend resources unnecessarily.").
>
> Therefore, to avoid the due process violation that would otherwise occur in this case, we decline to dismiss Uchima's Application "[i]n the interest of justice" and thus proceed to consider its merits.  Knight, 80 Hawaiʻi at 324, 909 P.2d at 1139 (holding that it was in the "interest of justice" to address the merits of the defendant's appeal notwithstanding the untimely filing of the notice of appeal).

Id. at 83, 464 P.3d at 871 (emphasis added).  Thus, under factual circumstances where counsel's ineffectiveness in filing an untimely appeal is clear and plain from the record, and where requiring a Rule 40 petition would unnecessarily prolong final determination and result in inefficient use of judicial resources, an appellate court may consider a late appeal on its merits, "[i]n the interest of justice."  Id.; Knight, 80 Hawaiʻi at 324, 909 P.2d at 1139.  See also Villados v. State, 148 Hawaiʻi 386, 392, 477 P.3d 826, 832 (2020) (citing Uchima and similarly holding that jurisdiction was properly exercised over Villados's late certiorari application where Villados's counsel's ineffectiveness was plain from the record).[11]

We conclude that, under Villados, Uchima, and Maddox, the ineffective assistance of counsel resulting in Cardenas's failure to timely file an appeal is "plain from the record" before us.  Uchima, 147 Hawaiʻi at 83, 464 P.3d at 871.  Here, the record reflects that Cardenas consistently indicated his desire for an appeal, throughout the relevant time frame, and that First Appointed Counsel was aware of Cardenas's desire for an appeal and to raise ineffective assistance of his trial counsel in that appeal.  After the jury's guilty verdict on September 16, 2015, Cardenas, then represented by the deputy public defender, told the Circuit Court, "I would like to file an appeal for ineffective counsel."  The deputy public defender

---

[11]     Villados was issued in December 2020, six months after Uchima.  In Villados, the supreme court explained:

> As this court held in State v. Uchima, 147 Hawaiʻi 64, 464 P.3d 852 (2020), a criminal defendant is entitled to the effective assistance of counsel on certiorari review.  Id. at 76, 464 P.3d at 864.  Uchima arose in the same context that Villados found himself in 2012:  a late application, which would normally deprive us of jurisdiction, caused by ineffective assistance of counsel on direct appeal.  Because the ineffectiveness of Uchima's counsel was plain from the record, we had authority to consider the application on its merits, as we do "when it is necessary to prevent a violation of due process or is in the interests of justice."  Id. at 82, 464 P.3d at 870.  Just as we considered Uchima's application on the merits, Villados's application should be considered on its merits as well.

148 Hawaiʻi at 392, 477 P.3d at 832.

filed a motion to withdraw nine days later, declaring that on September 16, 2015, when the guilty verdict was returned, that Cardenas "indicated to the court that he wanted to appeal the case based on ineffective assistance of counsel."  When First Appointed Counsel was appointed to represent Cardenas on October 14, 2015, even though the September 16, 2015 transcript had not yet been prepared, the deputy public defender's motion containing explicit reference to Cardenas's desire for an appeal, was plainly in the record for First Appointed Counsel's review.  See id.

First Appointed Counsel's OSC Declaration contains multiple acknowledgments that Cardenas timely expressed his desire for an appeal to Counsel.  Paragraph 9 states that Counsel discussed with Cardenas "a possible appeal regarding ineffective assistance of counsel" prior to the January 12, 2016 sentencing hearing.  That Counsel also believed that Counsel's "primary objective was to get the best possible sentence" for Cardenas does not mean that Counsel could simply focus on the primary objective of minimizing a jail sentence, and disregard Cardenas's inquiry regarding the "possible appeal regarding ineffective assistance of counsel."  See Maddox, 141 Hawai'i at 204, 407 P.3d at 160 (holding it is the duty of defense counsel to explain the client's right to appeal).  Counsel recalled in paragraph 13 that "on January 12, 2016, there was some discussion with [Cardenas] regarding ineffective assistance of counsel and his desire to pursue this issue."  That Counsel characterizes this discussion as "not in depth or in any specific detail" does not mean that Counsel did not have a duty to follow up with Cardenas on Cardenas's desire to pursue the issue of ineffective assistance of trial counsel.  See id.

First Appointed Counsel's statement in paragraph 14 that there was "no discussion as to the specific issues regarding his former public defender counsel" does not excuse Counsel of his duty to ascertain the specific ineffective assistance of counsel issues that Cardenas had only generally discussed with Counsel.  Counsel's statement in paragraph 21 that because Cardenas "abruptly left the courtroom" after sentencing and

"therefore we had no substantive discussion on the issue of ineffective assistance of counsel," does not absolve Counsel of his duty to follow up with Cardenas to continue the "substantive discussion" and advise Cardenas regarding an appeal raising ineffective assistance of counsel, and to take steps to preserve Cardenas's right to appeal. See id. (affirming responsibility of defense counsel to consult with defendant to determine whether defendant wishes to appeal and to fulfill the procedural requirements if defendant elects to appeal).

First Appointed Counsel acknowledges that Cardenas called in early February 2016 leaving a "call me back" message, but claims Cardenas did not follow up on this message. Counsel further recounted a subsequent call from Cardenas almost a year later in January 2017, where Cardenas stated that he wanted to appeal. Counsel does not indicate whether he made any attempts to follow up on either of these messages left by his client; ***and it was Counsel's duty, not Cardenas's***, to follow up and advise Cardenas regarding his right to appeal. See id. However, the OSC Declaration concedes that Counsel did not speak with Cardenas at all, until the November 7, 2017 HOPE modification hearing. Counsel's claim in paragraphs 30 and 31, that it was only after the November 7, 2017 hearing that Cardenas told Counsel that Counsel was appointed to file an appeal regarding ineffective assistance of counsel, is inconsistent with Counsel's acknowledged awareness of Cardenas's desire for an appeal set forth in paragraphs 9 and 13.

Under these circumstances, where First Appointed Counsel was aware of both Cardenas's desire for an appeal and interest in pursuing ineffective assistance claims against his trial counsel, we conclude that it is "plain from the record" that Counsel was ineffective for failing to discuss and advise Cardenas of his right to appeal, and failing to commence the steps to preserve Cardenas's right to appeal. Uchima, 147 Hawaiʻi at 82-83, 464 P.3d at 870-71; see Maddox, 141 Hawaiʻi 96, 407 P.3d 152.

2.     **Under the circumstances of this case, where Counsel was plainly ineffective and Cardenas received inaccurate information regarding the deadline for an appeal, consideration of Cardenas's appeal on the merits is warranted in the interest of justice.**

Under circumstances where counsel's ineffectiveness in filing an untimely appeal is clear and plain from the record, and where requiring a Rule 40 petition would unnecessarily prolong final determination and result in inefficient use of judicial resources, an appellate court may consider a late appeal on its merits "in the interest of justice." Uchima, 147 Hawai'i at 83, 464 P.3d at 871 (quoting Knight, 80 Hawai'i at 324, 909 P.2d at 1139) (internal brackets omitted). In Villados, the Hawai'i Supreme Court cited Uchima, noting that: "Because the ineffectiveness of Uchima's counsel was plain from the record, we had authority to consider the [late] application [for certiorari] on its merits, as we do when it is necessary to prevent a violation of due process or is in the interest of justice." 148 Hawai'i at 392, 477 P.3d at 832 (citing Uchima, 147 Hawai'i at 82, 464 P.3d at 870) (emphasis added) (internal quotation marks omitted). See also Knight, 80 Hawai'i at 324, 909 P.2d at 1139 (declining to dismiss a criminal defendant's late-filed appeal and addressing the merits "[i]n the interest of justice"); Caraballo, 62 Haw. at 315-16, 615 P.2d at 96 (declining to dismiss late appeal "where justice so warrants," where defendant withdrew appeal based on counsel's erroneous advice and "through no fault of his own"); State v. Ahlo, 79 Hawai'i 385, 392, 903 P.2d 690, 697 (1995) (citing Caraballo and applying "where justice so warrants" exception to allow late appeal to avoid "harsh and unjust results").

Here, while the 30-day deadline to appeal from the January 12, 2016 Judgment had not yet passed, Cardenas appeared at the February 3, 2016 HOPE warning hearing, without counsel, during which Cardenas expressed his intent to file an appeal to the HOPE Circuit Court, asked how to file an appeal, to which the HOPE Circuit Court responded, "You can file at any time." This statement was not accurate, since criminal appeals are subject to a 30-day deadline from the entry of judgment, under HRAP Rule 4.

The HOPE Circuit Court explained that the presence of counsel was "waived" for HOPE warning hearings; and thus, Cardenas did not have the benefit of having his court-appointed counsel present to correct or clarify the HOPE Circuit Court's inaccurate statement to him. In view of the HOPE Circuit Court's inaccurate statement to Cardenas that he could file an appeal at any time, without Cardenas's counsel present, the interest of justice also supports our consideration of Cardenas's late appeal in this case.

The timing of the HOPE Circuit Court's inaccurate information on February 3, 2016, juxtaposed against the timing of Cardenas's two phone calls to First Appointed Counsel in February 2016 and January 2017, further support our consideration of Cardenas's late appeal in the interest of justice. Counsel stated that Cardenas called him in early February 2016 and left a "Call me back" message, which coincides with the timing of the February 3, 2016 HOPE warning hearing. Counsel also related that Cardenas did not call again until almost a year later, in January 2017, saying that he wanted to appeal. The lack of any phone calls by Cardenas to Counsel between February 2016 and January 2017 is understandable where the record reflects that Cardenas was told he could appeal "at any time." Counsel confirmed they had no contact from the January 12, 2016 sentencing hearing until the November 7, 2017 HOPE motion for modification hearing. Cardenas thus was not advised by Counsel regarding the appeal, appeal process and appellate deadlines, during the pertinent time period.

On this record, we conclude that the interest of justice warrants allowing Cardenas's untimely appeal to proceed, in light of the above circumstances, where there was a lack of necessary advice about the appeal from his First Appointed Counsel who ineffectively failed to provide it, coupled with the erroneous information about the appeal deadline that Cardenas received at a circuit court hearing without his First Appointed Counsel present. See Villados, 148 Hawai‘i at 392, 477 P.3d at 832; Uchima, 147 Hawai‘i at 82, 464 P.3d at 870. Under the circumstances of this case, where Cardenas's First Appointed Counsel was plainly ineffective and where Cardenas received

inaccurate information regarding the deadline for appeal, Cardenas's appeal should proceed on the merits to avoid the "harsh and unjust" result of depriving Cardenas of his right to appeal.  <u>Ahlo</u>, 79 Hawai'i at 392, 903 P.2d at 697; <u>see</u> <u>Villados</u>, 148 Hawai'i at 392, 477 P.3d at 832; <u>Uchima</u>, 147 Hawai'i at 82, 464 P.3d at 870.  We now address the merits of Cardenas's appeal.

### B. **The Interference With Bus Operator jury instruction was not erroneous**.

Cardenas contends that the Circuit Court's jury instruction for the offense of Interference With Bus Operator[12] was prejudicially erroneous and misleading because it was unclear (1) whether the jury would have been able to discern that "reckless disregard of the risk" invoked the *mens rea* of

---

[12]     The Circuit Court instructed the jury as follows:

> ... A person commits the offense of interference with the operator of a public transit vehicle if he interferes with the operation of a public transit vehicle or lessens the ability of the operator to operate the public transit vehicle by threatening by word or conduct to cause bodily injury to the operator of the public transit vehicle in reckless disregard of the risk of terrorizing the operator of the public transit vehicle.
>
> There are three material elements of the offense of interference with the operator of a public transit vehicle, each of which the prosecution must prove beyond a reasonable doubt.  These three elements are:
>
> One, that on or about February 27, 2015, in the city and county of Honolulu, the defendant interfered with the operation of a public transit vehicle or lessened the ability of the operator, Ernest Lake, to operate the public transit vehicle; and
>
> Two, that the defendant did so by threatening by word or conduct to cause bodily injury to Ernest Lake, the operator of the public transit vehicle; and
>
> Three, that the defendant did so <u>in reckless disregard of the risk </u>of terrorizing Ernest Lake, the operator of the public transit vehicle.
>
> Public transit vehicle means a public paratransit vehicle providing service to the disabled, any transit vehicle used for the transportation of passengers in return for legally charged fees or fares, any school bus or any taxi.
>
> Bodily injury means physical pain, illness, or any impairment of physical condition.

(Emphasis added).

"recklessly," and (2) whether the jury clearly understood "reckless disregard of the risk" applied to each element of the offense charged.  Based on our plain error review as Cardenas failed to object below, this contention is without merit.

> When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.  Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.  However, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.

State v. Nichols, 111 Hawaiʻi 327, 334, 141 P.3d 974, 981 (2006) (internal citations, brackets, quotation marks, indentations, and paragraphing omitted).  "[O]nce instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt."  State v. DeLeon, 131 Hawaiʻi 463, 479, 319 P.3d 382, 398 (2014) (quoting Nichols, 111 Hawaiʻi at 337, 141 P.3d at 984 (footnote omitted)).

When "read and considered as a whole" and viewing the Circuit Court's instructions in their entirety, the jury instruction on the Interference With Bus Operator offense was not erroneous.  Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981.  The offense instruction correctly set forth the offense in accordance with HRS § 711-7112.  The state of mind was specified in Element Three, that "the Defendant did so in reckless disregard of the risk of terrorizing" Lake, and referenced the "reckless" state of mind for the offense under HRS § 711-1112.  The jury was also instructed that:  "You must consider all the instructions as a whole and consider each instruction in the light of all the others."  The circumstantial evidence instruction explained: "The state of mind with which a person commits an act such as 'recklessly' may be proved by a circumstantial evidence."  The

jury was also instructed pursuant to HRS § 702-204 (2014),[13] that:

> A person is not guilty of an offense unless the State proves beyond a reasonable doubt that the person acted with the required state of mind, as these instructions specify, <u>with respect to each element of the offense. The instruction for the offense charged specifies the state of mind required to be proved</u>.

(Emphasis added). Finally, the Circuit Court instructed the jury on the state of mind of "recklessly," pursuant to HRS § 702-206(3) (2014).[14]

Thus, the jury instructions, when viewed as a whole, correctly informed the jury that the applicable state of mind was "recklessly," accurately defined "recklessly," and specified that the reckless state of mind applied to all elements of the Interference With Bus Operator offense. Thus, the Interference

---

[13] HRS § 702-204 provides:

> Except as provided in section 702-212, a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense. When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

[14] The Circuit Court's jury instruction tracked HRS § 702-206(3) which provides:

> (3) "Recklessly."
>
> (a) A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.
>
> (b) A person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial and unjustifiable risk that such circumstances exist.
>
> (c) A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.
>
> (d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

With Bus Operator instruction was not prejudicially erroneous and misleading.  See Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981.

### C.    A unanimity instruction was not required.

Cardenas contends that the omission of a unanimity jury instruction, where Lake testified to at least six distinct acts[15] by Cardenas that arguably could have served as the basis for the conduct element of the charge, rendered the instructions prejudicially erroneous and misleading.  Based on our plain error review as Cardenas did not object to the Circuit Court's withdrawal of the unanimity instruction, we conclude this contention is without merit.

The Arceo requirement of a unanimity instruction applies when "separate and distinct culpable acts" are subsumed within a single charge, "any one of which could support a conviction thereunder."  State v. Mundon, 121 Hawaiʻi 339, 350, 219 P.3d 1126, 1137 (2009) (quoting Arceo, 84 Hawaiʻi at 32-33, 928 P.2d at 874-75).  "[T]wo conditions must converge before an Arceo unanimity instruction, absent an election by the prosecution, is necessary:  (1) at trial, the prosecution adduces proof of two or more separate and distinct culpable acts; and (2) the prosecution seeks to submit to the jury that only one offense was committed."  Id. (quoting State v. Kassebeer, 118 Hawaiʻi 493, 508, 193 P.3d 409, 424 (2008) (internal citations omitted)).

Both Cardenas and the State rely on the unanimity analysis for a Terroristic Threatening offense to argue whether or not a unanimity instruction was required for this Interference With Bus Operator offense.  Cardenas argues that the evidence showed multiple separate and distinct culpable acts, and that at no point did the State elect the specific act that constituted the "threat" to satisfy the conduct element.  The State asserts

---

[15]    Cardenas asserts the following conduct constituted distinct and separate acts warranting a unanimity instruction:  (1) straddling the standing line; (2) asking, "Why didn't you F'in kneel the bus?"; (3) taking an "aggressive" stance and stating, "Well, I am disabled.  You do what I F'n say."; (4) coming back to Lake and saying, "I want to add one thing."; (5) telling Lake, "I'm going to F'n kick your ass"; and (6) when Lake warned that he would call for assistance, answering, "Go ahead and F'in call them.  What the hell I care for? What the hell I care?  Call 'em."

that no Arceo unanimity instruction was necessary where there was "only one continuing course of conduct" that the Interference With Bus Operator offense "could be based on[.]"

The State relies on State v. Apao, 95 Hawai'i 440, 447 P.3d 32, 39 (2001), where the supreme court recognized that the statutory "terroristic threatening" definition in HRS § 707-715(1) did not preclude the prosecution "from proving that the required conduct element was committed by a series of acts constituting a continuing course of conduct." The Apao Court explained:

> Unlike the sexual assault offense at issue in Arceo, nothing in the statutory definition of terroristic threatening, or the penal code in general, precludes the prosecution from proving that the required conduct element was committed by a series of acts constituting a continuing course of conduct. Rather, the very nature of threatening conduct connotes a combination or series of words and/or actions that together constitute a threat. Thus, if the prosecution presented the evidence at trial as one continuous uninterrupted course of conduct, then no specific unanimity instruction would be required.

Id. Defendant Apao was convicted of second-degree terroristic threatening where the record showed that Apao began a "tirade of threats by both word and conduct to cause bodily injury" to the complainant from their first encounter at a bus stop, and "[a]t no point between the time Apao arrived at the bus stop until Perez was in the safety of the police at the Kāne'ohe residence was Perez not being threatened by Apao's words and conduct." Id. at 447-48, 24 P.3d at 39-40. The Apao Court concluded, "The record demonstrates that the multiple threats constituted a continuous uninterrupted series of acts," and a unanimity instruction was not required. Id. at 448, 24 P.3d at 40.

While the offense of Interference With Bus Operator for "threatening" conduct under HRS § 711-1112(1)(b) incorporates similar language as used in the "terroristic threatening" definition in HRS § 707-715 (2014),[16] it is a different offense

---

[16] HRS § 707-715 defines "Terroristic Threatening" in pertinent part:

A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . .

(continued...)

29

that requires ***additional elements*** beyond "terroristic threatening" conduct to establish a complete offense.  Thus, the unanimity instruction caselaw for terroristic threatening offenses is not dispositive in a unanimity analysis of this Interference With Bus Operator offense.

HRS § 702-205(a) (2014) provides:  "The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct" as "[a]re specified by the definition of the offense[.]"  For the offense of Interference With Bus Operator under HRS § 711-1112(1)(b), the conduct element must be proved by "[t]hreatening, by word or conduct, to cause bodily injury . . . ."  That the threatening conduct occur to "the operator of the public transit vehicle," as defined in subsection (2), is the required attendant circumstance that must be proved, for both subsections (1)(a) and (1)(b).  HRS § 711-1112.  That the conduct result in "interfer[ing] with the operation of a public transit vehicle" or "lessen[ing] the ability of the operator to operate the public transit vehicle" is the required result that must be proved.  <u>Id.</u>  Finally, the state of mind specified for an interference offense based on threatening, by word or conduct, to cause bodily injury, is intentionally (i.e., "intent to terrorize") or recklessly (i.e., "reckless disregard").  <u>Id.</u>; <u>see</u> HRS § 702-204 (specified state of mind applies to each element of the offense).  Thus, for an Interference With Bus Operator offense under HRS § 711-1112(1)(b) at issue in this case, the "threatening" conduct must also cause the prohibited result in subsection (1), i.e., that the person "<u>interferes with the operation of a public transit vehicle or lessens the ability of the operator to operate the public transit vehicle</u>."  (Emphasis added).

Here, the evidence reflected a single continuous, uninterrupted course of threatening conduct that caused the required result of interfering with Lake's ability to operate the

---

[16](...continued)
>        (1) With the intent to terrorize, or in reckless
>        disregard of the risk of terrorizing, another person
>        . . . .

bus, to establish an Interference With Bus Operator offense under HRS § 711-1112(1)(b). The evidence showed two possible threatening encounters between Lake and Cardenas on the bus, but only the latter encounter culminated in the required conduct and result necessary to establish criminal culpability under HRS § 711-1112(1)(b). The first encounter occurred when Cardenas approached Lake and said, "Well, I am disabled. You do what I F'in say," and this encounter resulted in Cardenas taking a seat as Lake requested. There was no evidence that the first encounter resulted in interference with bus operation or Lake's ability to operate the bus. The second encounter occurred when Cardenas approached Lake again, shouting about how he was not someone that Lake could boss around, and further verbally threatening Lake, "I'm going to F'in kick your ass" in an "aggressive, loud" voice; to which Lake said, "If you keep on talking to me while I'm operating a city bus, I am going to call;" Cardenas responded, "Go ahead and F'in call 'em"; and Lake pressed the "priority button" because he felt threatened. At that point, Lake testified that he could not operate the bus safely with Cardenas standing on the yellow line, talking to him within arm's length. Lake stopped and secured the bus, waited outside the bus for assistance, and police arrived a few minutes later.

Thus, the evidence showed that the second encounter resulted in interference with bus operation because the bus had to be stopped due to Cardenas's threat, and the second encounter also lessened the ability of Lake to safely operate the bus. In closing argument, the State focused only on the second encounter as constituting the offense, as follows:

> The bus had to be stopped after the incident between he and Mr. Lake. He interfered with the operation of that bus.
>
> . . . .
>
> Again, as I said earlier, the State has proven that the defendant, by both word or conduct, threatened to cause bodily injury against Ernest Lake. The threat, "I'm gonna fuckin' kick your ass," the conduct, his posture, his tone, his stance, being across that yellow line within arm's reach of the defendant while he was operating the vehicle.

(Emphasis added).  We conclude that only the second encounter with the verbal threat and the resulting impact to bus operation, constituted an offense of Interference With Bus Operator.

The Arceo unanimity requirement applies to "separate and distinct culpable acts," any one of which could support a separate offense.  84 Hawai'i at 32, 928 P.2d at 874 (emphasis added).  The Arceo Court held, inter alia, that separate acts of sexual assault cannot be "continuing offenses" where "each distinct act in violation of these statutes constitutes a separate offense . . . ."  Id. at 21, 928 P.2d at 863. Cardenas's argument that "separate and distinct culpable acts" of threatening conduct required a unanimity instruction is without merit because there were not separate and distinct acts that each constituted a separate completed offense of Interference With Bus Operator.  The evidence at trial showed a single continuous uninterrupted course of conduct culminating in the result necessary to establish the offense of Interference With Bus Operator.  See HRS § 711-1112(1)(b); Apao, 95 Hawai'i at 448, 24 P.3d at 40.  Because a unanimity instruction was not required where the evidence reflected a single continuous course of conduct constituting a single offense of Interference With Bus Operator, the Circuit Court's withdrawal of the unanimity instruction was not erroneous.  See Apao, 95 Hawai'i at 448, 24 P.3d at 40; Arceo, 84 Hawai'i at 32, 928 P.2d at 874.

D.    **The prosecutor committed misconduct by attacking Cardenas's credibility based on his status as the defendant**.

Cardenas contends that the prosecutor committed misconduct when he argued in closing that Cardenas, as the defendant, was the only person with an incentive to lie. Although Cardenas failed to object to this comment, we review for plain error, and conclude that this contention has merit.

"Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of 'whether there is a reasonable possibility that the error

complained of might have contributed to the conviction.'"  State v. Austin, 143 Hawaiʻi 18, 28, 422 P.3d 18, 28 (2018) (citation omitted).  Even in the absence of a defense objection to prosecutorial misconduct, we "may nevertheless recognize such misconduct if plainly erroneous" or when it "affects the substantial rights of the defendant."  Id. at 28-29, 422 P.3d at 28-29 (quoting State v. Wakisaka, 102 Hawaiʻi 504, 513, 78 P.3d 317, 326 (2003) (internal quotation marks omitted)).

In State v. Basham, 132 Hawaiʻi 97, 115, 319 P.3d 1105, 1123 (2014), the Hawaiʻi Supreme Court held that the prosecutor's argument that the jury should find the defendant not credible simply because he was the defendant constituted misconduct.  The Basham Court explained:  "[a] suggestion that defendants have no reason to tell the truth impinges upon fundamental principles of our system of justice, including the presumption of innocence, the burden of proof upon the government, the right to testify without penalty, and the right to a fair trial with an unbiased jury."  Id. at 116, 319 P.3d at 1124.  The Basham Court held:  "[A] prosecutor may not argue during closing argument that defendants, because they are defendants, have no reason to tell the truth or have the greatest motive to lie."  Id. at 118, 319 P.3d at 1126 (internal quotation marks omitted).  Basham clearly applies to the argument made in this case, and the prosecutor's statements constituted misconduct.

When determining whether prosecutorial misconduct rises to the level of reversible error, this court considers three factors:  (1) the nature of the misconduct; (2) the promptness or lack of a curative instruction; and (3) the strength or weakness of the evidence against the defendant.  Austin, 143 Hawaiʻi at 40, 422 P.3d at 40 (citation omitted).  As to the first factor, the nature of the alleged misconduct is such that it "invite[d] the jury to base its verdict on considerations other than the evidence in the case," State v. Schnabel, 127 Hawaiʻi 432, 452, 279 P.3d 1237, 1257 (2012) (internal quotation marks and citations omitted), i.e., because Cardenas is a defendant, he had no reason to tell the truth because he has the most to lose.  The prosecutor's improperly expressed view on Cardenas's credibility

was not argument that was properly based on the evidence or reasonable inferences therefrom.  This factor weighs in favor of Cardenas.

As to the second factor, because Cardenas did not object to the prosecutor's statement, the Circuit Court did not issue a curative instruction.  Under these circumstances, this factor weighs in favor of Cardenas.  See Wakisaka, 102 Hawaiʻi at 516, 78 P.3d at 329 (determining that as defendant's counsel did not object to a prosecutor's comments in closing arguments, and as the court did not give a curative instruction, that the second factor weighed in favor of the defendant.).

Finally, the third factor, the strength or weakness of the evidence, also weighs in favor of Cardenas.  With only two percipient witnesses with conflicting testimony at trial, the jury decided the case based on who it found more credible.  In "close" cases involving credibility of witnesses, "particularly where there are no disinterested witnesses or other corroborating evidence," appellate courts are "reluctant to hold improper statements harmless."  State v. Tuua, 125 Hawaiʻi 10, 17, 250 P.3d 273, 280 (2011) (comparing State v. Maluia, 107 Hawaiʻi 20, 27, 108 P.3d 974, 981 (2005), which noted that "'the prosecutorial misconduct in the instant case was harmless beyond a reasonable doubt'" where "'[t]he evidence against the defendant included two eyewitness accounts from witnesses unconnected to the defendant or the victim [and] also showed that the defendant's BAC was 0.131, raising additional doubts as to the defendant's credibility'," with State v. Rogan, 91 Hawaiʻi 405, 415, 984 P.2d 1231, 1241 (1991), which held that "the evidence did not outweigh the inflammatory effect of the prosecutor's comments, where the case 'turned on the credibility of two witnesses' and '[t]here were no independent eyewitnesses or conclusive forensic evidence'.").  In Tuua, the Court held the prosecutor's statement was not harmless in a second-degree assault case where the pivotal issue of who threw the bottle injuring the complainant turned on witness credibility.  Id.

Here, aside from the testimony of Officer Ellis, who arrived on scene after the incident was over, the jury was only

presented with the competing testimonies of Lake and Cardenas, each testifying to materially different versions of the relevant events. Under these circumstances, there is a reasonable possibility that the prosecutor's improper argument unfairly attacking Cardenas's credibility based on his status as the defendant may have contributed to Cardenas's conviction in this case. See id.; Basham, 132 Hawai'i at 116, 319 P.3d at 1124; Austin, 143 Hawai'i at 28, 422 P.3d at 28. We conclude that the prosecutorial misconduct constituted plain error affecting Cardenas's substantial right to a presumption of innocence, the right to testify without penalty, and the right to a fair trial, and it was not harmless beyond a reasonable doubt; and thus, we vacate and remand for a new trial. See Basham, 132 Hawai'i at 116, 319 P.3d at 1124; Wakisaka, 102 Hawai'i at 516, 78 P.3d at 329; Austin, 143 Hawai'i at 28, 422 P.3d at 28.

### III. CONCLUSION

For the foregoing reasons, we vacate the Judgment of Conviction and Probation Sentence, and Notice of Entry, filed on January 12, 2016, by the Circuit Court of the First Circuit, and remand for a new trial.

On the briefs:

Thomas Waters
(Law Offices of Thomas Waters)
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
for plaintiff-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge